## ABBEY *v.* FERRIS *et al.*

(*Supreme Court, General Term, Fifth Department.* April 11, 1890.)

**1. HUSBAND AND WIFE—CONTRACTS—EVIDENCE.**

A claim by a husband that moneys received by him from his wife at different times, during a period of 14 years, were borrowed under an agreement that he would repay them with interest as she might require, and that certain securities he had delivered to her were collateral securities for the repayment of such loans, cannot be sustained when supported mainly by his own unsupported testimony relating to verbal communications between him and his wife, while, on the other hand, the latter positively denies making any loans, and testifies that her husband

voluntarily offered to manage her estate, and return to her all the increase thereof, whether invested in securities or his business, and no reason is disclosed why the securities turned over to her were all taken in her name, as if part of her separate estate.

**2. APPEAL—HARMLESS ERROR.**

In an action at law to recover overpayments on contract debt, plaintiff cannot be heard to complain that there has been a mistrial, for the reason that while the referee found a certain sum to be due from plaintiff to defendant, yet he did not direct a judgment for the same.

Appeal from judgment entered on report of referee.

Action by Chauncey Abbey against Ada J. Ferris and Ester A. Abbey. There was judgment for defendants, and plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT. JJ.

*Walter W. Holt,* for appellant.    *F. L. Durand* and *C. D. Murray,* for respondents.

MACOMBER, J.   This action was brought to recover for an alleged indebtedness owing to the plaintiff by his wife, the defendant Ester A. Abbey, growing out of certain financial dealings between them; and incidentally for an accounting by such defendant of overpayments made to her by her husband, and a cancellation of certain conveyances and securities transferred by the plaintiff's wife to the other defendants.   Besides the general prayer for relief and for an injunction, there was a demand for a money judgment against Ester A. Abbey in the sum of $15,000.   The plaintiff and the defendant Ester A. Abbey intermarried in the year 1860.   The wife at that time was possessed of a separate estate of $5,000 and upwards in her own right. The complaint avers that between the years 1861 and 1875 the plaintiff borrowed of his wife about $5,000, and engaged to pay the same back to her, with interest, from time to time, as she might require it.   It further alleges that the plaintiff has paid to his wife divers sums of money, exceeding in amount the moneys received from her, or collected by him on her account; with interest thereon, and that there is a considerable sum of money due him upon such transactions.   It is further alleged that the plaintiff placed in his wife's hands certain securities as collateral security for the payment of such loan.   The residue of such complaint relates to the alleged transfer by the wife of certain securities to the other defendants, Ada J. Ferris, a sister, and her two children.   The answer denies explicitly any loan of money by the wife to the husband, but, on the contrary, alleges that the husband received from his wife her moneys under an agreement to invest and reinvest the same without any expense to her, and to turn over to her all of the increase and profits of such investments and reinvestments.

The principal issue, therefore, which was made by the allegations of the complaint and denials of the answer, was whether there had been any loan by the wife to the husband of her separate property.   The referee has found upon this question in favor of the defendants, and has dismissed the complaint.   He also found that the property of the wife had greatly increased under the skillful management of the plaintiff, and that the same was much larger at the time of the beginning of this action than it was at the time of the pretended loan.   This increase in her estate is accounted for, partly at least, by the fact which is claimed to exist, on behalf of the defendants, that the investments and reinvestments of the wife's money were not in mere securities at all times, bringing fixed and limited interest, but were to some extent used by him in his own business, which was, in part, the stocking of dairy farms in Chautauqua and Cataraugus counties, which proved very remunerative, and that it was a part of the original agreement that, when her money was so used by him, she should have all the profits and increase arising therefrom. We do not understand from the case that the fact of such increase of her property is controverted by the plaintiff.   His contention is that, whatever

the increase was, it belonged to him, because he had borrowed the money, and was liable to his wife only for the return thereof, with interest. Such is the relation of husband and wife, and their mutual duties to act as the agents, each of the other, that a presumption of law would arise that the handling of the moneys by the husband was done in behalf of and for the benefit of the wife, and that she would reap all the profits and increase thereof. Assuming that the contract set up in the complaint, if shown to exist, was valid and binding, it is important to inquire whether the plaintiff made out such a case as to defeat this legal presumption, and to establish the existence of an actual agreement between him and his wife for the borrowing of her moneys.

No agreement in writing or any written evidence of such a contract appears in this record. The case of the plaintiff rests almost wholly upon his own testimony relating to verbal communications between him and his wife. The corroboration, if there be any, of his version, is found only in alleged declarations casually made by the wife to other parties who had business transactions with the husband; such, for instance, as her answer to a person who had come to borrow money of her when, it is asserted, she said that she had none; that she had loaned all of her money to her husband. Such evidence, however, is of very little weight in determining the truth of the matter, because, as in the instance stated, it would have been easy for the witness' recollection to have been at fault, and that all the wife meant by what she said to him was that her husband handled all of her money. As a matter of fact, nearly all of such declarations given in evidence are utterly inconsistent with the procuring and delivery to, and actual possession at the time by, the wife of the many securities taken by her husband in her name. We therefore attach very little importance to the testimony of witnesses to facts of this character.

As stated before, the strength of the plaintiff's case rests mainly upon his own unsupported testimony, which is as follows: "*Question.* I would like to have you state to the court the circumstances under which you took the money relative to which you have testified. *Answer.* I borrowed it. *Q.* You may state more fully with reference to the circumstances under which you took it; the talk which you had from time to time, if you had more than one, with Mrs. Abbey relative to this money. *A.* The first that I got was small amounts, along about 1866. There wasn't much of anything said, as I recollect. There might have been, but I don't recollect it. The main amount that I got was in 1866, in April and in November, and she got it of her brother, C. B. Allen, and I was to pay her interest on it. *Q.* Did you have any other conversation with her at any other time? *A.* I presume I had other conversations with her about it, but I don't recollect." When recalled in reply the plaintiff further testified: "*Question.* Did you, at any time, have any conversation with Mrs. Abbey about investing her money in securities or in business? *Answer.* I never had any talk with her about investing it in business for her. I may have had some talk with her about it. I borrowed the money of her, and agreed to pay her interest. *Q.* Did you have any conversation with her about investing her funds, except the arrangement mentioned in your direct evidence? *A.* No, sir; not that I recollect of."

This evidence is quite inconclusive, and is hardly sufficient, standing alone, without contradiction, to enable us to say that the plaintiff has successfully borne the burden of proof which is cast upon him. The testimony given by the wife in her own behalf is too voluminous, even with condensation, to be quoted in the consideration of this appeal. Suffice it to say that she not only distinctly denies having loaned her husband any moneys, but she narrates with great minuteness the many conversations which she had with her husband, both before and after marriage, relating to the management and investment of her property. In brief, such testimony is that her husband voluntarily offered to manage her estate for her without charge, and to return to

her all of the increase thereof, whether invested in securities or in his business. In many of the details in her conversation she had the assistance of a diary which she kept through these years. Several witnesses are also called to sustain her case who have given testimony of alleged declarations of the plaintiff to the effect that he invested the moneys of his wife, and that she was worth a large sum of money; much more than her original property, with interest, would amount to. This testimony is of the same class as that already adverted to, and is of little importance in determining the question of fact between these parties. The acts of the husband, and his course of dealing with his wife's property, are of a much more reliable character. Up to the year 1866, the amount of moneys which he had received from her had been quite small, and had not apparently been invested. In 1867, however, the first security was turned over to his wife, and was in her name, and from that time all of the securities and evidences of debt and choses in action were taken in her name, or were transferred to her as though they were part and parcel of her separate estate. No reason is disclosed why the plaintiff should have thus handled her money if the claim now made was correct that he had borrowed it under an agreement to pay interest. As a question of fact, therefore, the conclusion of the referee was correct, namely, that the contract set forth in the complaint never was made. The learned counsel for the appellant argues with much elaboration that the conclusion of the referee was a mistrial, for the reason that, while he found a certain sum to be due from the husband to the wife, yet he did not direct a judgment for the same. If any party to the action could complain of such a result, it would be the wife, not the husband. She brings no appeal. Apparently she is not calculating upon any future litigation growing out of these transactions, when, perchance, she might be met with the objection that, if anything was due to her from her husband, the same should have been contained in this judgment. No question of that kind is before us. The plaintiff placed his right of action solely upon the allegation of a contract of borrowing, with an agreement to pay, with interest. He failed in that, and he cannot now properly be heard to say that his financial affairs with his wife, whatever they were, as disclosed by the case, ought to have been finally settled, and he discharged from liability thereon. In no sense was he a trustee for his wife. According to his complaint, he was dealing with her at arms-end, and to enforce his rights he brought an action at law to recover overpayments on contract debt. He must abide by the result of that action. It cannot now be turned into an action in equity. *Arnold* v. *Angell*, 62 N. Y. 508; *Stevens* v. *Mayor*, 84 N. Y. 296. The principal objection made upon this appeal to the reception or rejection by the referee of evidence is that Mrs. Abbey was permitted to read from her diary, rather than to give her recollection of the conversations and transactions with her husband. But no exception was taken by the appellant to this ruling, and consequently no advantage of the error can accrue to him on appeal, even if there were one. Upon the whole case, we think the judgment was right, and that it should be affirmed. All concur.